UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YVONNE FRANCIS, | : |
| Plaintiff, | : |
| v. | : Case No. 3:14-cv-972 (RNC) |
| Hartford Board of Education, | : |
| Defendant. | : |

RULING AND ORDER

Plaintiff Yvonne Francis brings this action under the ADA Amendments Act of 2008 ("ADAAA"), Title VII the Civil Rights Act of 1964, the Connecticut Fair Employment Practices Act ("CFEPA") and the Connecticut's Workers' Compensation Act ("CWCA"). She alleges that defendant Hartford Board of Education subjected her to various adverse employment actions because of discrimination based on her disabilities and in retaliation for complaining about discrimination. Defendant moves for summary judgment on all claims. For reasons that follow, that motion is granted.

I. Background

The parties' submissions show the following. West Middle School hired plaintiff as an Assistant Principal for the 2011-2012 school year based on the recommendation of Principal Sheilda Garrison. She and Garrison had disputes over compensation, food

1

ordering for a holiday luncheon, and Garrison's request for documentation when plaintiff requested sick leave.  On plaintiff's year-end evaluation, Garrison provided some positive feedback but requested that plaintiff participate in certain meetings, be more receptive to new ideas and practice better time management.  At that time, plaintiff applied to other available administrative positions because she wanted to advance her career and felt the work environment with Garrison was not positive.

On September 26, 2012, plaintiff sprained her shoulder while assisting a child who was having a temper tantrum.  She was initially given medical restrictions limiting her from lifting her right arm.  Her doctor later specifically restricted her from "lifting trays repeatedly."  (Adults typically had to help younger students lift trays in the cafeteria.)  On November 28, 2012, she was fully released with no physical restrictions.

While plaintiff was injured, she had a number of workplace disputes with Garrison.  The day after her injury, she missed a scheduled meeting with Garrison after telling Garrison she would attend.  According to plaintiff, Garrison gave her a hard time about leaving to attend physical therapy appointments and gave her unequal work assignments.  Plaintiff missed another meeting and, as a result, was for several weeks uninformed about new

proficiency goals at the school.

In November 2012, plaintiff filed an internal complaint against Garrison for racially-motivated harassment. The Central Harassment team later found insufficient evidence to support plaintiff's claim. Plaintiff eventually came to believe Garrison harassed her because of her disability. After she filed the complaint, Garrison expressed dissatisfaction with plaintiff's behavior: in December 2012, plaintiff received a written warning for leaving the building unsupervised, and in January 2013, she received a mid-year evaluation that rated her as "Needs Improvement."

On January 14, 2013, plaintiff notified the school she had suffered another work-related injury. This time it was a knee injury – traumatic chrondomalacia of the patella - sustained on December 17 as a result of a fall. According to plaintiff, she continued treatment through February 2014 and was diagnosed with a 5% permanent impairment. Because of this injury, plaintiff requested workers' compensation and was on sick leave from January 9 through February 20.

When plaintiff returned to work, she was directed to perform most of her work while seated and to avoid stairs. According to plaintiff, Garrison made it impossible to comply with these

restrictions by moving her office to the basement. Because there were no classrooms on that floor, plaintiff could not do her job duties, including evaluating teachers. Eventually, she and Garrison came up with a plan for her to stay on one floor a day so she could perform evaluations.

On March 18, 2013, Garrison formally reprimanded plaintiff for failure to fill out paperwork required for taking leave. Plaintiff responded with a letter stating that she had filled out the proper paperwork. She also accused Garrison of harassment and expressed the hope that it would be reflected in Garrison's evaluations. She copied Garrison's supervisor and the Director of Human Resources. Around this time, plaintiff was notified that her position was going to be eliminated. According to defendant, West Middle School was to be temporarily co-located with another school, resulting in a lower enrollment and no need for an Assistant Principal.

On April 10, 2013, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Citing her shoulder and knee injuries, she complained that defendant denied her reasonable accommodations based on her disability.[1] Shortly thereafter, on April 12, 2013, plaintiff took another medical leave. Despite being released by her doctor

---
1 Plaintiff also alleged she was discriminated against based on her age, sex, race, and religion. She has not made these claims here.

4

on May 6, 2013, she did not return to work until June 17, 2013.

Throughout May and into the summer of 2013, plaintiff was embroiled in several disputes. In early May 2013, Garrison wrote to plaintiff about her year-end evaluation. Plaintiff ignored offers to schedule an evaluation conference or provide information. Once again, Garrison rated her as "Needs Improvement." Plaintiff refused to sign a copy of the evaluation or meet with Garrison. At the same time, Garrison requested that plaintiff return an iPad, laptop and cell phone owned by the district. Plaintiff failed to respond to these requests. Garrison enlisted Dr. Scott Nicol, Executive Director of Performance Management, to reach out to plaintiff about signing the evaluation and returning the district-owned items. He told her in writing and via email that her signature did not imply she agreed with the evaluation and asked her to attend a meeting to bring back the items. Plaintiff failed to respond to these requests and eventually filed a complaint with the Hartford Police Department accusing Dr. Nicol of harassment. She never signed the evaluation form but eventually returned the items.

Because plaintiff's position was eliminated for the 2013-2014 school year, she sought a new administrative position in the district. At the end of the 2012-2013 school year there were over ten administrative positions. Plaintiff interviewed for one

position but did not receive an offer.  Due to her negative performance evaluations, she was not eligible for automatic placement in a new position.  Defendant later demoted plaintiff to teacher and continued her 2013-2014 salary.  Defendant cited her failure to follow the directives to sign her evaluation and failure to timely return the district's property.

In July 2013, plaintiff filed a grievance over her placement as a teacher and her salary continuation.  After a hearing, a neutral arbiter ruled that defendant did not violate the union contract.

II. Discussion

Defendant moves for summary judgment on all claims, arguing plaintiff has failed to raise triable issues of fact.  Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether this standard is met, the evidence must be viewed in the light most favorable to the non-moving party.  Id. at 255.

*A. Discrimination Claims*

Plaintiff claims defendant discriminated against her because of her disability when Garrison harassed her, gave her unequal work assignments and refused to provide reasonable accommodations. Claims under the ADAAA and CFEPA are governed by the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).[2] To show a prima facie case of disability discrimination under either statute, plaintiff must prove that (1) her employer is subject to the statute; (2) she is disabled within the meaning of the statute; (3) she is otherwise qualified to perform the essential functions of her job; and (4) she suffered an adverse employment action because of her disability. Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d. Cir 2004) (ADAAA); Jackson v. Water Pollution Control Auth. City of Bridgeport, 278 Conn. 692, 705, 900 A.2d 498, 507-08 (Conn. 2006) (CFEPA).

Under the ADAAA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . , (B) a record of such impairment, or (C) being regarded as having such an impairment."

---

2 Plaintiff also brings a discrimination claim under the CWCA, which prohibits employers from discriminating against employees for filing workers' compensation claims. Conn. Gen. Stat. § 31-290a. Because this claim is akin to a retaliation claim, I address it along with the other retaliation claims in Section II.B.

7

42 U.S.C. § 12102(a). Factors to consider include: 1) "[t]he nature and severity of the impairment," 2) "[t]he duration or expected duration of the impairment, and 3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Buotote v. Illinois Tool Works, Inc., 815 F. Supp. 2d 549, 556 (D. Conn. 2011) (quoting 29 C.F.R. § 1630.2(j)(2)). Under the CFEPA, a person is "physically disabled" if she has a "chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness." Conn. Gen. Stat. § 46a-51(15).

Plaintiff has not established that she was disabled under either the ADAAA or the CFEPA. Her medical restrictions were temporary and, as she states, "really minor." Neither her shoulder injury, for which she had restrictions from September to November, or her knee injury, for which she had restrictions from January to May, qualify as a chronic impairment or a physical impairment that substantially limits a major life activity. See Adams v. Citizens Advice Bureau, 187 F.3d 315, 317 (2d Cir. 1999) ("[A] temporary impairment of seven months, by itself, [is] too short in duration . . . to be substantially limiting." (citations and quotation marks omitted)); Caruso v. Siemens Bus. Commc'ns, Inc., No. 3:00-CV-0924(EBB), 2004 WL 235365, at *7 (D. Conn. Feb.

5, 2004) ("It is not possible that a twenty-three-day old injury, when Plaintiff had no prior back injuries, became a chronic disability in this minute amount of time."). Though plaintiff points to the 5% permanency rating to her knee, the permanency rating came long after the adverse employment actions and, in any event, a permanency rating does not equate to a disability. See Palmieri v. City of Hartford, 947 F.Supp.2d 187, 199 (D. Conn. 2013) (finding no disability where plaintiff had back injury with twenty percent permanency rating).

Because plaintiff has failed to show that she had a disability within the meaning of the ADAAA or CFEPA, defendant's motion for summary judgment is granted as to her claims of disability discrimination.

*B. Retaliation Claims*

Plaintiff claims that defendant retaliated against her in violation of the ADAAA, CFEPA, CWCA and Title VII. Claims for retaliation are analyzed under the same burden-shifting framework. To establish a prima facie case, plaintiff must show that 1) she engaged in activity protected by the statute, 2) the employer was aware of this conduct, 3) the employer took adverse employment action against her, and 4) a causal connection exists between the protected conduct and the adverse action. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (ADAAA);

9

Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (Title VII); Marini v. Costco Wholesale Corp., 64 F. Supp. 3d 317, 332 (D. Conn. 2014) (CFEPA and ADAAA); Martin v. Town of Westport, 108 Conn. App. 710, 718, 918 A.2d 921, 927 (CWCA) (Conn. App. 2007). If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for its action. Treglia, 313 F.3d at 721. Then the burden shifts back to the plaintiff to show that the defendant's articulated reason is merely a pretext for retaliation. Id.

Plaintiff claims she engaged in the following protected activities: requesting accommodations for her injuries, complaining to Garrison about how she was being treated after her shoulder injury, filing an internal harassment complaint, filing a CHRO complaint about her injuries and requesting workers' compensation. She points to the following adverse employment actions: Garrison mistreated her, gave her unequal work assignments, reprimanded her and gave her negative mid-year and year-end evaluations; Dr. Nicol pestered her about signing her evaluation and returning the district's property; and defendant demoted her with a salary continuation. Defendant argues that each of these actions was taken for legitimate, non-retaliatory reasons, specifically, that plaintiff did not act professionally.

Defendant points to plaintiff's refusal to comply with requests and directives of her supervisors, her failure to attend meetings, perform her duties, return district-owned property, and her failure to follow proper procedures. Defendant also argues that plaintiff's position was eliminated for unrelated reasons and her negative performance reviews were a legitimate basis for her demotion.

Assuming plaintiff has met her burden of presenting a prima facie case, defendant has satisfied its burden of providing legitimate, non-retaliatory reasons for its actions: plaintiff's disputes with Garrison predated her injuries and complaints, negating an inference of retaliation, and plaintiff admits to missing meetings, not responding to communications, refusing to sign her evaluation form and failing to timely return district-owned property. See Jamilik v. Yale Univ., 362 F. App'x 148, 151 (2d Cir. 2009) ("In pointing to the exhaustive documentation regarding [plaintiff]'s allegedly poor performance and disciplinary issues, however, [defendant] has met its minimal burden in rebutting [plaintiff]'s prima facie showing of retaliation.").

Plaintiff has not provided evidence to show defendant's legitimate, non-retaliatory reasons were a cover-up for retaliation. Plaintiff disputes the accuracy of her mid-year and

11

year-end evaluations and argues that defendant's proffered reasons are subjective, making it inappropriate for the Court to resolve this case on summary judgment.  She points out that "a sudden drop-off in performance evaluations" can support an inference of retaliation.  <u>Curcio v. Roosevelt Union Free Sch. Dist.</u>, No. 10-cv-5612 (SFJ)(AKT), 212 WL 3646935, at * 15 (E.D.N.Y. Aug. 22, 2012).  But plaintiff offers no evidence, direct or circumstantial, that she received negative performance evaluations *because* she engaged in protected activities.  Contrary to plaintiff's assertion, defendant did not provide solely subjective reasons for plaintiff's negative performance evaluations: the evaluations were supported by extensive evidence regarding plaintiff's behavior, much of which plaintiff does not dispute.  Plaintiff provides no evidence that any of her supervisors ever discussed her complaints, let alone that the adverse actions were because of the complaints.

Because plaintiff has failed to present evidence permitting a jury to find in her favor on the retaliation claim, defendant is entitled to summary judgment.

III. <u>Conclusion</u>

Accordingly, the motion for summary judgment [ECF No. 37] is hereby granted.

So ordered this 30th day of September 2017.

/s/
Robert N. Chatigny
United States District Judge